# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| COPPER MOON COFFEE, LLC, <br> 1503 Veterans Memorial Parkway E <br> Lafayette, Indiana 47905 <br><br> Plaintiff, <br><br> v. <br><br> ORLANDO COFFEE COMPANY, LLC d/b/a <br> THE COPPER MOON, <br> 1127 Euclid Avenue, Suite 104 <br> Cleveland, Ohio 44115 <br><br> Serve also registered agent: <br> John J. Ricotta <br> 1370 Ontario St., Suite 1810 <br> Cleveland, Ohio 44113 <br> Defendant. | Civil Action No.: |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff Copper Moon Coffee, LLC ("Plaintiff"), by counsel, for its Complaint and Demand for Trial by Jury against Defendant Orlando Coffee Company, LLC doing business as The Copper Moon ("Defendant"), alleges and states as follows:

### NATURE OF THE ACTION

1. This is an action for infringement of Plaintiff's well-known federally-registered trademark filed pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), all arising from the Defendant's unauthorized use of the mark in connection with his business activities.

## THE PARTIES

2. Plaintiff is a producer, roaster, and distributor of coffee throughout the contiguous United States including Ohio.

3. Plaintiff has a principal office address located in Indiana.

4. According to the Ohio Secretary of State, Defendant organized as an Ohio limited liability company or about September 16, 2014.

5. Defendant operates and does business as "The Copper Moon" coffee shop located at 1127 Euclid Ave., Suite 104, Cleveland, Ohio 44115 (the "Premises").

## JURISDICTION AND VENUE

6. This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. §§ 1331 (actions arising under federal law), and 1338(a) and (b) (acts of Congress related to patents, trademarks, and unfair competition claims joined therewith).

7. The court has general personal jurisdiction over Defendant as its principal office address is in Ohio at the Premises.

8. The court has specific personal jurisdiction over Defendant through its substantial, continuous, and systematic contacts in the State of Ohio and, specifically, conducting business as a coffee shop selling and serving food and beverages at the Premises on a daily basis.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant is located in this District, under § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and/or under § 1391(b)(3) because Defendant is subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

## FACTUAL BACKGROUND

A. **Plaintiff's Business**

10. Plaintiff is a family-owned business based on coffee and community.

11. Plaintiff sells coffee in a range of varieties, roasts, and sizes.

12. Plaintiff owns and operates a coffee roasting facility in Lafayette, Indiana.

13. Plaintiff sells much of its product instore throughout the United States at retailers such as Costco, Sam's Club, Meijer, Top's, HEB, and online through its own website and through retailers such as Amazon, Staples, Office Depot, Costco, Sam's and Walmart.

14. Plaintiff takes efforts to bring its coffee directly to consumers.

15. Post-pandemic, at-home brewing has grown considerably and consumption rates have increased.

16. Through marketing and advertising, Plaintiff seeks to reach customers in a variety of ways including social media.

17. Plaintiff has a long history of positive social media advertising.

18. Plaintiff continuously seeks to increase followers on social media platforms, including on TikTok.

19. Because of this, Plaintiff's name and brand are instrumental to its success.

20. Success to the Plaintiff in terms of its business is not only an issue of bottom-line profitability, but also includes philanthropic efforts.

21. Plaintiff has established Reach for the Moon®, which is Plaintiff's philanthropic arm supporting various local and national non-profit organizations .

22. Within these efforts, Plaintiff established a campaign called, We Give a Cup, which provides complimentary coffee to health care workers, firefighters, police officers, members of the military, and educators.

23. Plaintiff also supports the Astronaut Scholarship Foundation.

24. Plaintiff also supports many other local charities.

25. These efforts are ongoing and integral to Plaintiff's organization.

**B.  Plaintiff's Trademark Registration**

26. On or about October 5, 2004, Plaintiff registered the words "COPPER MOON" (the "Trademark") with the United States Patent and Trademark Office (USPTO) as Registration No. 2891961 for coffee in Class 30 (the "Registration").

27. Class 30 includes without limitation foodstuffs of plant origin, except fruits and vegetables, prepared or preserved for consumption and particularly includes coffee and beverages made with coffee.

28. Plaintiff's first use of the Trademark was on or about June 1, 2003.

29. The Trademark consists of standard characters without claim to any particular font, style, size, or color.

30. The Trademark is on the USPTO's principal register.

31. As such, Plaintiff's Trademark has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. Attached hereto and incorporated herein **Exhibit 1** is a copy of the registration certificate for the Registration.

32. Since June 1, 2003, Plaintiff has used the Trademark in commerce throughout the contiguous United States and in Canada (Registration No. TMA766516).

33. Plaintiff's Trademark is also registered in many other countries throughout the world including without limitation United Kingdom (UK00801239493); European Union (WIPO Reg No 1239493); Australia (WIPO Reg No 1239493); China (WIPO Reg No 1239493); Japan (WIPO Reg No 1239493); and Korea (WIPO Reg No 1239493).

34. The Trademark was used continuously by the former owner when selling coffee in the former grocery chain Marsh Supermarkets until 2007 when it was purchased by the current owners.

35. Since that time, Plaintiff has used the Trademark on its products and merchandise, in marketing and advertising, and in connection with its philanthropic efforts as stated above.

36. As a result of its widespread, continuous, and exclusive use of the Trademark to identify Plaintiff and its goods, Plaintiff owns valid and subsisting federal statutory and common law rights to the Trademark.

37. Plaintiff's Trademark is distinctive to both the consuming public and to Plaintiff's trade.

38. Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting its goods sold under the Trademark including without limitation hundreds of thousands of dollars on marketing and advertising alone.

39. As a result of its distinctiveness and widespread use and promotion throughout the United States, Plaintiff's Trademark is a famous trademark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of Defendant as alleged below.

    **C.**    **Defendant's Infringement**

40. Defendant is a coffee shop located at the Premises in Cleveland, Ohio.

41. Without registering an assumed business name, Defendant uses the name "Copper Moon" on its signage at the Premises. A picture of Defendant's signage at the Premises is attached hereto as **Exhibit 2**.

42. Defendant uses the name "Copper Moon" on its coffee mugs at the Premises.

43. Defendant uses the name "The Copper Moon" as part of the business' social media handles and profile names including @TheCopperMoon on Twitter, The Copper Moon on Facebook, and coppermooncle on Instagram.

44. Plaintiff's first use of the Trademark and Registration of the Trademark predates Defendant's existence.

45. As such, Defendant was charged with constructive notice of the Trademark prior to its first use.

46. At no time did Plaintiff provide Defendant authorization to use the Trademark in any way for its business or for its social media.

47. Accordingly, Defendant's use "Copper Moon" in its physical business operations as well as its online use constitutes infringement on the Trademark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

**D.     Actual Confusion in the Marketplace & Dilution of Plaintiff's Brand**

48. In August 2024, a TikTok video posted by @superheroeveryday2 showed a barista at Defendant's location explaining that he was not able to sell the patron coffee if she was going to give the drink to a homeless person outside.

49. According to the TikTok video, the barista stated Defendant's policy was that selling coffee to her in such scenario causes trouble for Defendant's employees because it has people harassing customers out front.

50. Since the TikTok video was posted, it was viewed millions of times.

51. Since the TikTok video was posted, thousands of TikTok users shared their opinions on the matter in the comments section to the video.

52. A majority of the comments were negative and against such a policy.

53. Articles about the TikTok video were written by the Daily Mail, a British tabloid, as well as other media outlets. Attached hereto as **Exhibit 3** is Daily Mail article currently available at: https://www.dailymail.co.uk/news/article-13908095/ohio-coffee-shop-policy-customers-homeless-people.html.

54. Unfortunately, Plaintiff also received negative comments on its social media as well as direct messages as a result of the TikTok video. Attached hereto as **Exhibit 4** are examples of some of the comments and messages.

55. Many individuals have asked Plaintiff questions about its policy for feeding the homeless.

56. Many individuals have made negative posts or comments about Plaintiff with the belief Plaintiff was affiliated with Defendant.

57. Many individuals have indicated they would not purchase Plaintiff's products because of the TikTok video.

58. As such, Defendant's infringement of the Trademark has resulted in actual confusion in the marketplace between Plaintiff and Defendant.

59. Due to extraordinary efforts on the part of Plaintiff's employees, Plaintiff has endeavored to respond to these posts and messages in an attempt to clear up the confusion in the marketplace.

60. However, Plaintiff is unable to adequately respond to clear up the confusion because such confusion is inherent by Defendant's use of the Trademark in the context of coffee sales.

61. Regardless of whether Defendant has such a policy, the confusion in the marketplace has harmed Plaintiff's goodwill and goals with its business and philanthropic efforts that are directly contrary to Defendant's policy that is portrayed on social media.

62. Plaintiff's goodwill and public perception will continue to be harmed if Defendant is allowed to continue to infringe on the Trademark.

63. On August 9, 2024, Plaintiff sent Defendant a cease and desist letter related to its infringement and demanding:

    a. You and any related entities to immediately cease and desist from all use of the Copper Moon Marks and any confusingly similar marks, including but not limited to THE COPPER MOON now and in the future. Further, You agree to cease all use and take down or remove all uses of the following: any trademark or confusingly similar mark, domain name, corporate name, business name, and/or dba, website, downloadable computer software and app, App Icon, logo, social media site; confusingly similar to the Copper Moon Marks, including but not limited to, all computer software, downloadable computer applications from IOS, Android and Windows stores, and any webpages, advertisements, promotional material, and social media sites, including but not limited to, Facebook, X/Twitter, Instagram, Snapchat, TikTok, YouTube, LinkedIn and/or related marketing and promotional channels.

    b. You agree not to, now and/or in the future, adopt, use, and/or register, for source indicating purposes, any trademark, domain name, corporate name, business name, and/or dba, website, downloadable computer software and app, App Icon, logo, social media site, and/or related promotional and marketing materials incorporating the Copper Moon Marks; any trademark, domain name, corporate name, business name, and/or dba, website, downloadable computer software and app, App Icon, logo, and social media site confusingly similar to the Copper Moon Marks.

64. Defendant did not formally respond to Plaintiff's cease and desist letter.

65. Nevertheless, Defendant did subsequently update its Facebook profile to show that it was, "Not affiliated with the coffee roaster, Copper Moon Coffee, LLC of Lafayette Indiana, or its produc[t]". Attached hereto as **Exhibit 5** is screenshot from Defendant's Facebook profile showing the same.

66. The language used by Defendant in its updated Facebook profile shows Defendant is aware that its use of the Trademark is or may be confusing to the public.

67. Despite this updated Facebook profile, Defendant did not take any efforts to cease using the Trademark.

68. Defendant continues to infringe on the Trademark in its physical operations as well as its online media to date.

## COUNT I – FEDERAL TRADEMARK INFRINGEMENT

69. Plaintiff restates and repleads each and every allegation contained in the previous paragraphs, and each of those paragraphs are incorporated in Count I as if wholly set forth herein.

70. Defendant's unauthorized use in commerce of the Trademark is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

71. Defendant's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

72. Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

73. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

74. Plaintiff has no adequate remedy at law.

75. Plaintiff is entitled to, among other relief, preliminary and permanent injunctive relief, an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II – FEDERAL UNFAIR COMPETITION

76. Plaintiff restates and repleads each and every allegation contained in the previous paragraphs, and each of those paragraphs are incorporated in Count II as if wholly set forth herein.

77. Defendant's unauthorized use in commerce of the Trademark is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely

to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

78. Defendant's unauthorized use in commerce of the Trademark constitutes use of a false designation of origin and misleading description and representation of fact.

79. Upon information and belief, Defendant's conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

80. Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

82. Plaintiff has no adequate remedy at law.

83. Plaintiff is entitled to, among other relief, preliminary and permanent injunctive relief, an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**COUNT III – FEDERAL TRADEMARK DILUTION**

84. Plaintiff restates and repleads each and every allegation contained in the previous paragraphs, and each of those paragraphs are incorporated in Count III as if wholly set forth herein.

85. Plaintiff's Trademark is distinctive and a "famous mark" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

86. Plaintiff's Trademark became distinctive and famous prior to the Defendant's acts as alleged herein.

87. Defendant's acts have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiff's famous Trademark.

88. Defendant's acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Plaintiff's Trademark by undermining and damaging the valuable goodwill associated therewith.

89. Defendant's acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

90. Plaintiff is entitled to, among other relief, preliminary and permanent injunctive, an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Copper Moon Coffee, LLC requests judgment against Defendant Orlando Coffee Company, LLC doing business as The Copper Moon including the following relief:

1) Finding that Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114) under Count I for infringement on Plaintiff's Trademark; violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) under Count II for unfair competition under federal law; and/or violated and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)) under Count III for dilution of Plaintiff's Trademark;

2)     Awarding Plaintiff compensatory damages and an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a));

3)     Directing that Defendant account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby;

4)     Declaring this an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a));

5)     Granting a preliminary and/or permanent injunction enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities from:

    a.     Displaying, distributing, marketing, advertising, promoting, the sale of, offer for sale of, and/or using any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the Trademark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's Trademark including without limitation on Facebook, X/Twitter, Instagram, Snapchat, TikTok, YouTube, LinkedIn and/or related marketing and promotional channels;

    b. Directing all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the Trademark or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's Trademark, and to immediately remove them from public access and view;

    c. Making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that Defendant's goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff, or that Plaintiff's goods and services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendant;

    d. Engaging in any activity that infringes Plaintiff's rights in its Trademark;

    e. Engaging in any activity constituting unfair competition with Plaintiff;

      f.      Engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's Trademark;

      g.      Registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Trademark or any other mark that infringes or is likely to be confused with Plaintiff's Trademark, or any goods or services of Plaintiff, or Plaintiff as their source; and/or

      h.      Aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (h).

6) Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's Trademark;

7) Awarding Plaintiff interest, including prejudgment and post-judgment interest; and/or

8) Awarding such other and further relief as the Court deems just and proper.

/s/ Zachary C. Schaengold
Zachary C. Schaengold (0090953)
Robbins, Kelly, Patterson & Tucker, LPA
312 Elm Street, Suite 2200
Cincinnati, Ohio 45202
T: (513) 721-3330 | F: (513) 721-5001
zschaengold@rkpt.com


Spencer Tanner*
Gutwein Law
300 N. Meridian St. Suite 1650
Indianapolis, IN 46204
T: (317) 777-7920
Spencer.Tanner@gutweinlaw.com
*  *pro hac vice application forthcoming*

**Attorneys for Plaintiff**
**Copper Moon Coffee, LLC**